OPINION OF THE COURT
Burton S. Sherman, J.
Petitioner moves to confirm an arbitration award and the *936 respondent cross-moves to vacate the award on the grounds of misconduct of the arbitrator, pursuant to CPLR 7511 (b) (1) (i).
The issue to be determined is whether a party who during the hearings secretly furnished New York Knickerbocker basketball tickets to an arbitrator can cause the award to be vacated by claiming such arbitrator’s misconduct.
The hearing before the arbitrator appointed by the American Arbitration Association began on May 2, 1991. It proceeded in leisurely fashion with seven sessions, the last on February 24, 1992. Posthearing briefs were submitted and the award rendered in petitioner’s favor on June 2, 1992. The instant petitions were brought in June 1992 and submitted on September 29,1992.
The respondent states that prior to the fifth session on October 29, 1991, he was in the hearing room with the arbitrator and the arbitration tribunal clerk. Pleasantries were exchanged and the respondent mentioned that he had had a breakfast meeting with the then coach of the New York Knickerbocker basketball team. He was then asked by the arbitrator if he were able to obtain basketball tickets for him over the Thanksgiving holiday. The arbitrator was admonished by the tribunal clerk for the inappropriateness of such a request. Undaunted, after the tribunal clerk left the room, the arbitrator again solicited tickets from the respondent. Respondent obliged. He had six tickets delivered to the arbitrator’s law office. As part of the transaction the arbitrator requested that the respondent include a note that he, respondent, had not paid for the tickets. Nothing further was mentioned of the incident until the last session in February 1992 when the arbitrator, again alone with the respondent, asked him never to mention the tickets to anyone. These allegations were not challenged.
Based upon the aforementioned facts and other claims that the arbitrator had made ex parte attempts to pressure a settlement and claims of his inattentiveness during the hearing, the respondent moves to vacate the award. The petitioner claims complete surprise and denies any knowledge of the transaction having first learned about it in respondent’s cross petition to vacate the award. This further corroborates respondent’s claim as to the covertness of the transaction. Petitioner further denies any wrongdoing on its part or ex parte communications with the arbitrator.
In keeping with a strong policy favoring arbitration as a *937 method of dispute resolution (Shearson/Am. Express v McMahon, 482 US 220; Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88), the law will set aside an arbitration award where there is even a suggestion of impropriety or partiality by an arbitrator (Matter of Goldfinger v Lisker, 68 NY2d 225; Matter of Catalyst Waste-to-Energy Corp. [City of Long Beach], 164 AD2d 817; Matter of Fischer [Queens Tel. Secretary], 106 AD2d 314; Matter of Milliken Woolens [Weber Knit Sportswear], 11 AD2d 166, affd, 9 NY2d 878). Based upon this, the respondent argues by innuendo that if the arbitrator exacted tribute from him what did he obtain from the other side to obtain a favorable award? This he further argues, plus the arbitrator’s surreptitious ex parte attempts to pressure him into a settlement and his inattentiveness at the hearing is sufficient impropriety and misconduct to set aside the award.
Admittedly, this illustrates the pernicious effect of the arbitrator’s conduct. An innocent party in the midst of an arbitration having expended time and money is often reluctant to abort the proceeding by objecting and moving to disqualify the arbitrator. On the other hand, he is fearful of offending the arbitrator by rejecting his requests. He therefore finds himself between Scylla and Charybdis, or, as said today, between a rock and a hard place. However, all is not lost, for the law makes his choice for him. It specifically provides that an alleged aggrieved party must immediately object to an arbitrator’s misconduct or such claim shall be deemed waived. This is in keeping with another "clear judicial policy in favor of noninterference in arbitration proceeding” (Matter of Namdar v Mirzoeff, 161 AD2d 348, 349) based upon the recognition of its consensual nature and recognition of the need for finality. Therefore, the law will overlook, on the grounds of waiver, a claim of misconduct where the complaining party had either actual or constructive knowledge of the arbitrator’s impropriety, had an opportunity to object and failed to do so before the award was rendered. (Matter of Stevens & Co. [Rytex Corp.], 34 NY2d 123; Matter of Namdar v Mirzoeff, supra, 161 AD2d 348; Matter of Sterling Cheek v Chubb & Son, 70 AD2d 622; Palmieri v Insurance Co., 67 AD2d 967; Matter of Lebow [Bogner-Seitel Realty], 55 AD2d 695; cf., Matter of Catalyst Waste-to-Energy Corp. [City of Long Beach], supra, 164 AD2d 817, where the aggrieved party preserved his claim by timely objection.) Admittedly, all the aforementioned cases involved situations where the complaining parties’ conduct *938 was passive. The court has failed to find a case where the alleged aggrieved party was an active participant in the impropriety. So this might be termed a case of first impression. The reason for this is, of course, obvious.
In any event, in the instant case there can be no doubt that there was consideration involved. For while it appears that the respondent did not pay for the tickets, he did furnish them to the arbitrator. The court will take judicial notice of the fact that there are those, including the court, who believe that six Knick tickets are priceless even during a losing season. Nor can the respondent explain away his Faustian deal on the grounds of innocence. He was informed by the tribunal clerk of the impropriety of the arbitrator’s request. Moreover, he continued to participate in the conspiracy by acceding to the arbitrator’s subsequent request that the transaction be kept secret. An inference could well be drawn that the respondent’s continued participation in the conspiracy was because of the expectation of a favorable result. For he waited eight months until the award was rendered before claiming a technical foul. It is therefore simply a case of his being "Hoist with his own petar” (Shakespeare, Hamlet, act III, sc 4). While this court looks with disfavor upon the arbitrator’s conduct, denying relief to the successful party because of respondent’s admitted transgressions would under these circumstances be grossly unfair. Nor would finality be achieved. Indeed the sheer effrontery of his contentions (often termed "chutzpah”) would in and of itself be a sufficient reason for its denial. In any event, the respondent has waived any claim of misconduct. All other claims to vacate the award as provided by CPLR 7511 are without merit.
The petition to confirm the award is granted and the cross petition is denied.